The document below is hereby signed.

Signed: October 1, 2020



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DWAIN W. TATE, | ) | Case No. 19-00237 |
| | ) | (Chapter 13) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter |

MEMORANDUM DECISION AND ORDER RE DEBTOR'S OBJECTION
TO AMENDED PROOF OF CLAIM OF FAIRFAX VILLAGE CONDOMINIUM I

This memorandum decision and order addresses the *Debtor's Objection to Amended Claim #5 Filed 3/10/2020 by Creditor Fairfax Village Condominium I* (Dkt. No. 70) ("*Objection to Claim*"). Fairfax Village Condominium I ("Fairfax") asserts a claim for delinquent condominium assessments and associated late fees and attorney's fees.[1]  This claim is secured by property located at 3939 Pennsylvania Avenue, SE, Unit 201, Washington, D.C. 20020

---

[1]  Fairfax Village Condominium I's proof of claim asserts a claim for $53,554.72, including $25,818.35 in unpaid condominium assessments and late fees, $6,623.49 in attorney's fees and costs, and interest accruals thereon.

(the "Property"), as to which Fairfax has a lien pursuant to the Condominium Act, D.C. Code § 42-1903.13.

Annetta M. Tate ("Ms. Tate"), the debtor's mother, owned the Property until her death.  After his mother passed away intestate, the debtor, who is the heir to the Property, continued to make the monthly payments on the mortgage and condominium fees.  However, Ms. Tate remained the "named owner" according to the deed on file with the Recorder of Deeds and the Office of Tax and Revenue tax records.  The debtor began paying the condominium fees, but eventually fell delinquent.  Fairfax initiated foreclosure procedures, once in late 2016, and again in early 2019, via a notice of foreclosure dated March 8, 2019, with a foreclosure sale set for April 11, 2019.  Before the second scheduled foreclosure sale, however, the debtor filed the petition commencing this bankruptcy case on April 10, 2019.[2]  The debtor now objects in part to the amounts Fairfax seeks for past assessments and attorney's fees and costs and seeks a reduction in each amount.

I

FAIRFAX'S CLAIM FOR CONDOMINUM ASSESSMENTS AND LATE FEES

In his *Objection to Claim*, his reply (Dkt. No. 73) to Fairfax's opposition to the *Objection to Claim* (Dkt. No. 72), and at a hearing held on June 4, 2020, the debtor contended that

---

[2]  Fairfax proceeded with the foreclosure sale in violation of the automatic stay, but subsequently unwound the sale.

Fairfax's secured claim as to unpaid assessments ought to be reduced on three grounds: (1) that the relevant statute of limitations only granted Fairfax a secured claim as to assessments coming due within three years before the petition date (or coming due postpetition); (2) that the statute of limitations limits the entirety of Fairfax's claim to the three-year limitations period, such that Fairfax has no secured claim for the unpaid assessments that came due more than three years before the petition date; and (3) that the claim should be reduced to reflect the terms of a settlement entered into between the debtor and Fairfax, pursuant to which Fairfax agreed to cancel foreclosure proceedings in early 2017 and waived late fees based on the debtor's payment of $6,000 to Fairfax.  Fairfax in opposition maintains (1) that the past due assessments and associated fees are subject to the twelve-year statute for documents under seal; (2) that even if the twelve-year limitations period is applicable, Fairfax's lien should be calculated as of late 2016, when it initially commenced foreclosure proceedings; and (3) that the negotations between the parties were never consummated.  The court addresses each issue in turn.

A

WHETHER THE CONDOMINIUM INSTRUMENTS ARE INSTRUMENTS
UNDER SEAL AS TO MS. TATE AND BY IMPLICATION AS TO THE DEBTOR

"Under the Bankruptcy Code, a claim is allowed except to the extent that the claim 'is unenforceable against the debtor and property of the debtor under any agreement or applicable law.' 11 U.S.C. § 502(b)(1).  Accordingly, any claim that is time-barred by a statute of limitations is unenforceable under applicable law, and must be disallowed."  *In re Hardy*, No. 16-00280, 2018 WL 1352674, at *2 (Bankr. D.D.C. Mar. 13, 2018).  The primary contention between the debtor and Fairfax is whether Fairfax's claim for unpaid assessments is subject to a three-year or twelve-year statute of limitations.  D.C. Code § 12-301(6) provides for a twelve-year limitations period for an "instrument under seal," whereas D.C. Code § 12-301(7) provides for a three-year limitations period for contracts generally.  Whereas the debtor argues that only the three-year limitations period applies, Fairfax contends that its Condominium Declaration (found at Dkt. No. 72-1) is a document under seal within the meaning of D.C. Code § 12-301(6), and therefore that the twelve-year statute of limitations applies.

Critical to the determination whether the Condominium Declaration is a document under seal is the determination whether the procedures for creating a document under seal were followed.  The District of Columbia Court of Appeals has held that "in the

4

case of an individual, in contrast to a corporation, . . . the
presence of the word 'seal' next to an individual's signature is,
standing alone, sufficient to create a sealed instrument entitled
to the twelve-year statute of limitations." *Burgess v. Square
3324 Hampshire Gardens Apartments, Inc.*, 691 A.2d 1153, 1154
(D.C. 1997) (citing cases).  Furthermore, the Court of Appeals
has stated:

> [A] party to a contract "may adopt the seal of another as
> his own[.]" *McNulty v. Med. Serv. of District of
> Columbia*, 176 A.2d 783, 784 (D.C.1962).  There is no
> required procedure that one must complete to adopt a
> seal.  78A C.J.S. Seals § 5 (1995).  "[W]hen one party
> signs an instrument to which another has affixed his
> seal, there is a presumption that he has adopted that
> seal." *McNulty, supra*, 176 A.2d at 784.  But, "the
> adoption by an individual of a seal printed on a document
> which he signs is largely a matter of intention."  78A
> C.J.S. Seals § 5 (1995).

*Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 317 (D.C. 2008).
However, while it is true that an individual can adopt the seal
of another party (and in this contested matter, Fairfax impliedly
contends that Ms. Tate, and the debtor as her successor, have
adopted its seal as found on the Declaration), District of
Columbia law as articulated in *Burgess* and *Murray* requires the
document in question to have the signature of the party as to
whom it is alleged to be under seal. *See id.* at 318 (rejecting
argument that contract ought to be treated as a document under
seal because "the copy of the settlement agreement before the

trial court and this court includes *no signature* and no seal on behalf of" the appellee) (emphasis added).  *See also Farouki v. Petra Intern. Banking Corp.*, 608 Fed. Appx. 8, 10 (D.C. Cir. 2015) (document was not instrument under seal because "neither the word 'seal' nor any physical seal appears *next to Farouki's signature* on the Guaranty, and notary stamps were affixed only after the parties had signed the instrument") (emphasis added); *In re Hardy*, No. 16-00280, 2018 WL 1352674, at *2 (Bankr. D.D.C. Mar. 13, 2018) ("On both the Note and the Deed of Trust, *next to Hardy's signature*, is, in parentheses, the word 'seal.' This is sufficient under D.C. law to create a sealed instrument.") (emphasis added).  Because the Condominium Declaration bears no signature on behalf of Ms. Tate or the debtor, it ought not be treated as a document under seal as to them, such that the twelve-year limitations period of D.C. Code § 12-301(6) should apply rather than the three-year period of D.C. Code § 12-301(7).

At the hearing held on June 4, 2020, Fairfax argued that a Maryland case, *Columbia Ass'n v. Poteet*, 199 Md. App. 537, 23 A.3d 308 (Md. App. 2011), supported the contention that just as under Maryland Code, C.J.J. § 5-102(a)(5), condominium instruments ought to be treated as documents under seal notwithstanding that the parties against whom they are being enforced were not signatories on the condominium instruments, the same should apply under District of Columbia law.  However, the

issue in question in *Poteet* differs from the issue here.  It is true that in *Poteet*, as here, the parties contesting the twelve-year statute of limitations for instruments under seal were not themselves signatories to the condominium instruments.  However, in *Poteet*, the assignor *was* a signatory to the condominium declaration in question.  *Poteet*, 199 Md. App. at 544, 554, 23 A.3d at 312, 318 ("Ames's signature, however, was needed to create a binding 'Agreement and Declaration of Covenants, Easements, Charges and Liens.'  Thus, as with any other contract, Ames's signature under seal was sufficient to make the Declaration a specialty as to her obligations thereunder.").  Thus, the issue in *Poteet* was not whether condominium instruments may as a matter of course be treated as documents under seal as to unit owners, but whether the condominium instruments must be deemed instruments under seal as to non-signatory assignees of signatory parties as to whom the documents were documents under seal.  As the court further stated in *Poteet*:

> Next, we reject the Poteets' argument that the Declaration was not an instrument under seal as it applied to them.  Pursuant to the Declaration, each lot of the Property subject to the Declaration, including the lot ultimately acquired by the Poteets, became burdened and bound by the covenants, easements, charges, and liens imposed in the Declaration when the Property was conveyed to Ames and when Ames conveyed the Property to HRD.  The Declaration also provided that the covenants, easements, charges, and liens "shall be binding upon ... [Ames], her heirs, executors, administrators and *assigns*." (Emphasis added).  Furthermore, the Deed by which the Poteets

7

> acquired title to their property stated that the
> covenants, easements, charges, liens, restrictions, and
> other encumbrances set forth in the Declaration were
> "binding upon the [Poteets], their heirs and assigns."

*Id.* at 199 Md. App. at 554-55, 23 A.3d at 318 (emphasis and
emendations in original). If the only question were whether any
condominium documents instruments under seal as to Ms. Tate also
bound the debtor as her heir, *Poteet* might be of assistance to
Fairfax.[3] However, the absence of Ms. Tate's (or the debtor's)
signature on the condominium instruments submitted to the court
distinguishes *Poteet* from this contested matter.[4] Accordingly, I
reject Fairfax's argument that the twelve-year statute of
limitations applies, and conclude that Fairfax's secured claim as
of the petition date is limited to assessments and associated

---

[3]   In any event, the debtor has not argued that he would
not be bound to the statute of limitations for documents signed
under seal by Ms. Tate.

[4]   Separately, I doubt that the intent of D.C. Code § 12-
301(6) or Maryland Code, C.J.J. § 5-102(a)(5) was to subject all
condominium instruments bearing the seal of the condominium
association (or a notary) to the twelve-year statute of
limitations. If that were so, the factual inquiries into the
existence of relevant parties' signatures in *Burgess* and *Poteet*
would be superfluous, because the seals of the condominium
associations should have sufficed to cause the documents to be
documents under seal. *Compare Farouki v. Petra Intern. Banking
Corp.*, 811 F. Supp. 2d 388, 408 (D.C. Cir. 2011), *vacated in part
on other grounds*, 705 F.3d 515 (D.C. Cir. 2013) ("Moreover, if
the Court were to allow a notary's seal to be adopted as a
party's own seal, it would subject every document notarized in
the District of Columbia to a twelve-year statute of limitations
without regard to the parties/ actual intent.").

charges that came due within the three years before the recommencement of foreclosure proceedings on March 8, 2019.

B

WHETHER THERE REMAINS AN UNSECURED CLAIM AS TO
ASSESSMENTS THAT ARE NOT COVERED D.C. § 42-1903.13

D.C. Code § 42-1903.13(e) provides:

> The lien for assessments provided herein shall lapse and be of no further effect as to unpaid assessments (or installments thereof) together with interest accrued thereon and late charges, if any, if such lien is not discharged or if foreclosure or other proceedings to enforce the lien have not been instituted within 3 years from the date such assessment (or any installment thereof) become due and payable.

Because the statute provides that the "lien for assessments" shall "lapse," the question remains whether any *unsecured* claim for assessments falling before the three-year period of § 42-1903.13(e) survives.

I conclude that there is no allowed unsecured claim for amounts owed before the three-year period of § 42-1903.13(e). As the court previously noted (without deciding) in another contested matter involving assertions of claims for condominium assessments that came due before the three-year period of § 42-1903.13(e), "[t]he three-year statute of limitations of D.C. Code § 12-301(7), applicable to enforcing contracts not under seal, may bar the unsecured claims." *In re New Pitts Place*, LLC, Case No. 18-00527, 2019 WL 3739903, at *2 (Bankr. D.D.C. Aug. 7,

9

2019).  This is a correct understanding of the interplay between
§ 42-1903.13(e) and § 12-301.  In § 42-1903.13, there is no
provision extending the statute of limitations as to any
unsecured claim for the assessments falling before the 3-year
period of § 42-1903.13(e), and the relevant case law (such as
*Burgess*) treats § 12-301(6)-(7) as governing causes of action
that arise from the provisions of the condominium instruments
that are not governed by § 42-1903.13.  Accordingly, it would be
improper to read § 42-1903.13(e) as creating a 3-year limitations
period as to the lien for assessments and some other unspecified
limitations period for assessments as to which the lien has
expired.  Instead, it entitles condominium associations to a lien
specific to unpaid assessments and other specified costs arising
therefrom that came due within the limitations period.

    In a *Supplemental Response to Objection to Claim* (Dkt. No.
91), Fairfax further argues that the three-year statute of
limitations is not applicable because the decedent's estate of
Ms. Tate, which is not a party to the proceedings, has not raised
this affirmative defense, and because the debtor lacks standing
to assert the statue of limitations.  However, these arguments
fail.  As this court has previously held, the debtor's having
only an equitable interest in the Property as heir does not
preclude standing.  *See Tate v. Fairfax Village I Condominium (In
re Tate)*, A.P. No. 19-10009, 2019 WL 2932419, at *2 (July 8,

2019) (citing *United States v. Wade*, 992 F. Supp. 6, 11 (D.D.C. 1997) (rejecting argument that heirs could not assert standing because D.C. Code § 20-105 vested legal title in the personal representative)).  The failure of the estate to be included as a party, or of title to the Property to have passed to the debtor, does not preclude his assertion of the statute of limitations.  *See In re Griffin*, 489 B.R. 638 (Bankr. D.Md. 2013) (allowing debtor-heir who resided in decedent's property and made mortgage payments to utilize 11 U.S.C. § 1322(c)(2) to modify the payment of a secured claim).[5]

C

WHETHER THE 3-YEAR PERIOD OF
§ 42-1903.13(e) OUGHT TO BE CALCULATED STARTING FROM THE
COMMENCEMENT OF FORECLOSURE PROCEEDINGS IN DECEMBER 2016 OR
FROM THE COMMENCEMENT OF FORECLOSURE PROCEEDINGS IN MARCH 2019

D.C. Code § 42-1903.13(e) provides that the lien for assessments shall lapse "if such lien is not discharged or if foreclosure or other proceedings to enforce the lien have not been instituted within 3 years from the date such assessment (or any installment thereof) become due and payable."  Fairfax commenced foreclosure proceedings twice: once in December 2016 (which it canceled in January or February of 2017), and again on

---

[5]  A claim is allowed except to the extent that it "is unenforceable against the debtor and property of the debtor under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  The allowed claim is enforceable against the Property.  Whether it is enforceable as well as a personal obligation of the debtor is a moot point I need not address because the claim is fully secured by the Property.

March 8, 2019 (the date of the association's notice of foreclosure), with a foreclosure sale set for April 11, 2019. Fairfax contends that even if only a three-year limitations period is applicable, it ought to be calculated as of December 2016.  In contrast, the debtor contends that the three-year period of § 42-1903.13(e) ought to be calculated as of the petition date.

D.C. Code § 42-1903.13(e) provides that the lien for assessments shall lapse as to an assessment "if foreclosure or other proceedings to enforce the lien have not been instituted" within 3 years after the assessment became due and payable. There appears to be no dispute that the foreclosure sale of which Fairfax gave notice in December 2016 was canceled in early 2017. Had the foreclosure sale proceeded, regardless of how long it took for the foreclosure sale to occur, the foreclosure proceedings would have been instituted as of December 2016, and the lien for each assessment accruing as of December 2013 (three years beforehand) or later would not have lapsed and could be asserted in the foreclosure sale.  However, because the foreclosure sale was canceled, there was no longer a "foreclosure or other proceedings to enforce the lien" instituted as to assessments and associated costs arising before December 2016. Nor can the institution of foreclosure in December 2016 be treated as causing the lien for assessments accruing after

12

December 2016 from never lapsing: once the foreclosure sale was
canceled, it was a nullity.  The canceled foreclosure sale did
not result in the lien for any assessment arising after December
2016 having not lapsed if foreclosure or other proceedings were
not commenced within three years.  The result is that the liens
for any assessments that arose more than three years before the
recommencement of foreclosure proceedings on March 8, 2019, have
lapsed.  Therefore, by the terms of § 42-1903.13(e), such
assessments must be disallowed, resulting in the claim for
assessments and associated costs being reduced to the amounts
owed for the three years immediately preceding the recommencement
of foreclosure proceedings on March 8, 2019.

     To elaborate, Fairfax appears to argue that it is entitled
to a lien for all assessments as of three years before December
2016 until the petition date, notwithstanding that it canceled
the foreclosure proceedings of late 2016/early 2017, but it has
provided no basis for interpreting § 42-1903.13(e) in this way.
Once the foreclosure proceeding terminated, there was no longer a
proceeding pending in which Fairfax was attempting to enforce its
lien and could invoke §  42-1903.13(e).  Moreover, Fairfax's
interpretation would have this result: the institution of
foreclosure proceedings by a condominium association that were
later dismissed would bar the lapsing of a lien as to assessments

13

arising years after dismissal of the foreclosure proceedings.  I
reject Fairfax's interpretation of the statute.

D

ADDITIONAL EQUITABLE CONSIDERATIONS
REGARDING THE STATUTE OF LIMITATIONS

At the hearing of June 4, 2020, and in the *Supplemental
Response to Objection to Claim* (Dkt. No. 91), Fairfax raised
equitable grounds for overruling the debtor's objection to its
secured claim:

> Mr. Tate has lied, bounced checks, delayed the probate
> process, and otherwise deliberately avoided paying his
> fair share of the Condominium budget and expenses.  Now
> Mr. Tate is attempting to use this court to diminish the
> total amount due to the Condominium so that he can sell,
> rent, or otherwise profit from the Unit he inherited. ...
> Bankruptcy entitled debtors to a "fresh start," but not
> a head start, and it should not be permitted to allow one
> person to deliberately hide behind the system to avoid
> his obligation to his fellow Unit Owners.

On the evidence before the court, Fairfax has not
demonstrated that the debtor "has lied," or "deliberately
avoided paying his fair share of the Condominium budget and
expenses."  While it is true that the debtor fell delinquent
in making assessment payments, his having done so is not
itself evidence that he "deliberately avoided paying his
fair share of the Condominium budget and expenses," because
"mere nonpayment, without more, evidences not dishonesty but
the defining characteristic of all debtors-honest and
dishonest, alike-insufficient resources to honor all of

14

one's obligations." *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996) (citation, internal quotation marks, and alterations omitted)), *cited in U.S. v. Storey*, 640 F.3d 739, 744 (6th Cir. 2011).

As to allegation of bounced checks, the record reflects that the debtor gave Fairfax a check for $9,000 dated January 18, 2017, which bounced, and that subsequently he provided a cashier's check dated February 9, 2017, for $6,000. *See* Dkt. No. 70-2 (exhibit containing records of the checks). There is no indication that the debtor otherwise had an ongoing issue with providing bounced checks as a method of avoiding paying the condominium assessments.

Moreover, while it is true that the debtor did not pursue a prompt administration of Ms. Tate's probate estate, there is no evidence that the debtor invoked the failure of the estate to be administered so as to prevent Fairfax from acting on its rights to foreclose. In the case of the foreclosure set for early 2017, the debtor contacted Fairfax's counsel and attempted to work out a payment plan, which resulted in the aforementioned partial payment of $6,000. *See* Dkt. No. 70-4 (containing email exchanges between the debtor and Fairfax's counsel). In the case of the foreclosure set for April 2019, the debtor's recourse was to file the petition commencing the instant case. In

15

neither instance is there any evidence that the debtor
sought to use the delays in administration of Ms. Tate's
probate estate to improper advantage.

Nor is there any indication that the delay in the
probate process prevented Fairfax from exercising its
rights.  The failure of the debtor to convey title (in his
capacity as personal representative) to himself (in his
capacity as heir) did not preclude Fairfax from pursuing
foreclosure.  And as noted above, on the evidence before the
court, only the commencement of this bankruptcy case (and
the automatic stay) prevented the foreclosure sale set for
April 2019 from being effective.

E

THE EFFECT OF THE DEBTOR'S $6,000 PAYMENT TO FAIRFAX

In late 2016 and early 2017, the debtor and Fairfax were
negotiating a settlement that would lead to the termination of
the foreclosure proceedings that Fairfax had commenced.  In the
course of these negotiations, Brian Fellner, counsel for Fairfax,
represented that a lump sum payment of $9,000 would suffice to
cancel the foreclosure sale and that he might be able to waive
late fees and interest.  The debtor never tendered the entire
$9,000, but instead provided payment of $6,000 to Fairfax on
February 9, 2017, subsequent to which the foreclosure sale was
cancelled.  The debtor contends that acceptance of the payment of

$6,000 and the cancellation of the foreclosure sale should be treated as full agreement to the terms of the negotiations between the parties, including the waiver of late fees and interest.  Fairfax contends that because the debtor never made payment of the remaining $3,000, these negotiations are irrelevant as to the waiver or late fees and interest.

Fairfax is correct that the negotiations between the parties prior to the cancellation of the original foreclosure sale are not relevant to whether any late fees or interest should be waived given the debtor's failure to tender the entire $9,000 requested by Fairfax.  The negotiations were never consummated, and in any event, according to the record, Fellner did not confirm that he had the authority to waive late fees and interest, but only stated that it was a possibility.

However, these negotiations have some relevance to the debtor's assertion that he made a $6,000.00 payment by which Fairfax's claim ought to be reduced.  Nevertheless, even though I find that the $6,000.00 payment was made, it does not result in reducing Fairfax's proof of claim.  Fairfax's proof of claim includes an itemization of payments made regarding assessments and late fees for the Property.  It shows that in early 2017, two payments were made, one on February 7, 2017, for $5,370.56 and one on March 20, 2017, for $5,900.00.  It does not reflect a payment of $6,000, but I have found that the $6,000 was received.

17

However, the three payments total only $17,270.56.  There is no
indication in the record that the debtor designated such payments
to be applied to specific assessments and late fees that had been
incurred.  Fairfax was free to apply those payments, as it saw
fit, to the amounts that had been incurred as of February 1,
2017, and that it was claiming to be owed.[6]  Fairfax's proof of
claim shows that as of February 1, 2017, $32,908.35 was owed, and
that of that $28,837.55 had been incurred by March 1, 2016.
Fairfax was free to apply the $17,270.56 in payments to the
earliest assessments and late fees included in the $28,837.55
incurred prior to March 8, 2016.  Accordingly, the debtor has not
shown that the $17,270.56 in payments was applied to amounts
incurred after March 8, 2016, for which Fairfax presently has a
lien.  Fairfax was entitled to apply payments as favorably as
possible to itself.  Accordingly, the $6,000 payment does not
reduce the amount owed for the period within three years before
March 8, 2019.  Fairfax's claim for unpaid assessments and late
fees incurred between March 8, 2016, and the petition date of
April 10, 2019, will therefore be allowed in full.

---

[6]   We know that in its notice of foreclosure for the
foreclosure sale set for April 2019, Fairfax was asserting the
full amount of unpaid assessments and late fees owed, and not
limiting the amount to amounts incurred within three years.  It
is inferred that the foreclosure notice of December 2016 claimed
whatever were the outstanding unpaid assessments and late fees
then owed, which the proof of claim shows exceeded $32,000 and
included the $28,847.55 incurred prior to March 8, 2016.

The proof of claim shows that the assessments incurred after March 8, 2016, and to the petition date of April 10, 2019, total $12,323.00 and that late fees relating to those assessments total $1,800.00.  Accordingly, as of the petition date, Fairfax's lien secures $14,123.00 of assessments and late fees, plus interest thereon, and also secures attorney's fees and costs incurred.

II

FAIRFAX'S CLAIM FOR ATTORNEY'S FEES

The attorney's fees included in the proof of claim include $1,271.49 in fees incurred from December 31, 2009, to November 12, 2015, for an unnamed law firm (*i.e.*, neither Fellner nor his prior law firm Nagle & Zaller), which have no supporting documentation.  These fees must be disallowed for the following two reasons.

*First*, as set forth above, the court determines that the relevant 3-year period under DC Code § 42-1903.13 must be calculated as of March 8, 2016.  Accordingly, because the work performed by the unnamed law firm occurred before March 8, 2016, the lien associated with each of these amounts has lapsed.  As the District Court explained in *Reynolds v. Gateway Georgetown Condominium Ass'n, Inc.*, Civ. A. No. 85-3276, 1986 WL 2808, at *5 (D.D.C. 1986), when dismissing a claim for attorney's fees associated with foreclosure proceedings:

> Plaintiff can not separate the attorneys fees from the condominium assessments and the foreclosure proceedings.

19

It was only because of the past due condominium assessments that plaintiff owed attorneys fees pursuant to section 45-1853 and that defendants were entitled to foreclose on plaintiff's property, also pursuant to section 45-1853. The dispute over attorneys fees arose out of the same nucleus of operative facts and was an integral part of any dispute over the amount owed the condominium association. Thus, plaintiff had a cause of action as of the date the lien came into being for past due assessments and such date was no later than July 27, 1982, more than three years prior to the filing of this suit.

Moreover, even according to Fairfax's argument that their lien extends back to 2013 (*i.e.*, three years prior to the initiation of the first foreclosure proceedings), the $608.42 in fees for work performed in 2009 and 2010 would have to be disallowed.

*Second*, the reasonableness of attorney's fees under this provision of the Condominium Act cannot be determined without time records. *See Robinson v. Fairfax Village Condominium VIII*, 600 A.2d 94, 95-96 (D.C. 1991) (applying former D.C. Code § 45-1853 (1981) and remanding fee award calculation due to the inadequacy of the record on which it was based). Because there is no record of what work was performed, or by whom, the record in this instance is necessarily inadequate. *See In re Madison Guar. Sav. & Loan*, 373 F.3d 1373, 1381 (D.C. Cir. 2004) (disallowing fees for an attorney listed only by initials without information regarding the identity of the attorney or the reasonableness of the rates charged); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1434 (S.D.N.Y. 1994) (same).

Accordingly, fees in the amount of $1,266.49 for work performed
before March 8, 2016, are disallowed.

The proof of claim includes two sheets documenting legal
fees and costs (Claim 5-2 Parts 8 and 9).  The debtor objects to
a "lien filing fee of $36.50 from the Recorder of Deeds" found on
the first sheet (Claim 5-2 Part 8).  The debtor further objects
to $2,515.50 of the fees and costs listed on the second sheet
(Claim 5-2 Part 9) incurred after November 12, 2015 (when Fairfax
was represented by  Fellner or his prior law firm Nagle &
Zaller), stating that "without any probative documentation these
fees should be excluded from the claim."  At the hearing on the
objection to claim, the debtor did not present evidence to rebut
the prima facie validity of the proof of claim as to these items.

Accordingly, the $36.50 lien filing fee on the first sheet
will be allowed.  The fees and costs on the first sheet totaling
$2,836.50 are allowed but of this $150 was for attorney's fees
incurred postpetition such that $2,686.50 of the fees and costs
on the first sheet are allowed as of the petition date.

The court will also allow the $2,515.50 of fees and costs on
the second sheet incurred after November 12, 2015, as they are
described with sufficient detail, appear reasonable, and were not
rebutted by any evidence presented by the debtor.  For example,
one cost claimed on the second sheet was $1,500.00 incurred on
December 1, 2016, for "Foreclosure Notice and advertisement" that

were "Costs paid to auction house and newspaper for publication."
A cost of the same amount and for the same purpose was incurred
on March 1, 2019, with respect to the second scheduled
foreclosure, and the debtor has expressly agreed that this second
$1,500.00 claimed on the first sheet should be allowed.  The
debtor has not offered a valid reason to question the $1,500.00
amount on the second sheet.  The remaining fees and costs
charged, including $825 for "Foreclosure Notice and advertisement
- 3 hours at $275 per hour for attorney" incurred on December 1,
2016" are described adequately and are not unreasonable.
Accordingly, $2,515.50 of fees and costs on the second sheet will
be allowed as a secured claim as of the petition date.

Together, the allowed secured claims as of the petition date
for attorney fees and costs ($2,686.50 and $2,515.50) total
$5,202.00.

III

CONCLUSION

For the foregoing reasons, the court holds that Fairfax has
an allowed secured claim as of the petition date for for
assessments incurred on or after March 8, 2016, and by April 10,
2020, late fees thereon, and $5,202.00 in attorney's fees and
costs, plus interest accruals thereon.  All amounts that came due
on or before March 8, 2016, are disallowed as barred by the
statute of limitations.  It is thus

22

ORDERED that the *Debtor's Objection to Amended Claim #5 Filed 3/10/2020 by Creditor Fairfax Village Condominium I* (Dkt. No. 70) is sustained in part and overruled in part as follows. It is further

ORDERED that Fairfax has an allowed secured claim as of the petition date for:

(1) past due assessments and late fees in the amount of $14,123.00;

(2) attorney's fees and costs in the amount of $5,357.00, and

(3) interest accruals thereon to be specified in an amended proof of claim to be filed within 28 days after entry of this order,

and also has an allowed secured claim for the $150.00 in attorney's fees incurred postpetition.  It is further

ORDERED that the *Objection to Claim* is otherwise sustained with respect to amounts claimed as of the petition date.

[Signed and dated above.]

Copies to: All recipients of e-notification of orders.

23